Robert Abiri, Esq.
ABIRI LAW, PC
30021 Tomas Street, Suite 300
Rancho Santa Margarita, CA 92688
T. 949.459.2133
F. 949.534.4367
rabiri@abirilaw.com

Stephen DeNittis, Esq. (Pro Hac Vice forthcoming)
Shane T. Prince, Esq. (Pro Hac Vice forthcoming)
DENITTIS OSEFCHEN PRINCE, P.C.
5 Greentree Centre, Suite 410
525 Route 73 N.
Marlton, New Jersey 08057
T. 856.797.9951
F. 856.797.9978
sdenittis@denittislaw.com

*Attorneys for Plaintiff and the Proposed Classes*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

TIERA NANCE, for Herself, as Private Attorney General, and/or on Behalf of All Others Similarly Situated,

Plaintiff,

v.

THE KROGER CO.,

Defendant.

Case No. 2:26-cv-08090

**CLASS ACTION**

**COMPLAINT FOR:**

1. **Violation of Consumers Legal Remedies Act, California Civil Code § 1750 *et seq*.**
2. **Violation of False Advertising Law, California Business & Professions Code § 17500 *et seq.***
3. **Violation of Unfair Competition Law, California Business & Professions Code § 17200 *et seq.***
4. **Breach of Warranty**
5. **Unjust Enrichment**
6. **Permanent Public Injunctive Relief**

**JURY TRIAL DEMANDED**

Plaintiff TIERA NANCE, individually, as private attorney general, and/or on behalf of all others similarly situated, alleges as follows, on personal knowledge and/or on information and belief and/or on the investigation of her counsel, against Defendant THE KROGER CO. ("Kroger"):

## I. INTRODUCTION AND SUMMARY

1. Defendant Kroger owns and operates hundreds of retail supermarkets and multi-department stores in California and throughout the United States, under the names Kroger, Ralphs, Food 4 Less, and Foods Co.

2. In its retail stores, as well as online, Kroger advertises, markets, and sells numerous packaged food products under various private label brands, including Kroger®, Private Selection®, Simple Truth®, and Simple Truth Organic®.

3. Many of these private label branded food products advertise boldly and prominently on the front of the package that the products contain **"No Preservatives"** or **"No Artificial Preservatives."**

4. Despite these front-of-package claims, the ingredients listed in small print on the back of the packages disclose that many such products in fact contain additives which are widely recognized in the food industry as preservatives and/or chemically-processed, preservative-like ingredients – additives such as citric acid, lactic acid, ascorbic acid, sodium citrate, sodium phosphate, disodium phosphate, natamycin, and sodium acid pyrophosphate.

5. These labeling practices create a direct contradiction between the products' front label and their actual ingredient composition, misleading consumers like Plaintiff Tiera Nance into believing that they are purchasing products that are free from preservatives and/or artificial additives, when the products in fact contain preservatives and artificial additives.

6. Such labeling misrepresentations appear across multiple Kroger private label lines – specifically the Kroger®, Private Selection®, Simple Truth®, and Simple Truth Organic® brands – and span multiple product categories, including macaroni and cheese, rice products, prepared meals, canned soup, salad dressing, and frozen breakfast foods, indicating a coordinated, uniform corporate mislabeling practice rather than isolated formulation decisions.

7. Kroger's misrepresentations are particularly misleading for products marketed under the Simple Truth® and Simple Truth Organic® brands, whose titles convey healthiness, wholesomeness, and clean-label attributes. When paired with Kroger's **"No Preservatives"** or **"No Artificial Preservatives"** misrepresentations, the presence of additives that perform preservative and/or stabilizing functions is likely to mislead a reasonable consumer regarding the products' healthfulness, purity, and natural composition. Customers who purchased these products paid a price premium based on Kroger's misrepresentations.

8. Plaintiff brings this action individually on her own behalf as a deceived Kroger customer, as a private attorney general seeking the imposition of public injunctive relief against Kroger, and as a representative plaintiff in this proposed class action, seeking injunctive, declaratory, and monetary relief for herself and all California citizens who purchased any complained-of, falsely-advertised product – identified in Attachment A hereto – in a brick-and-mortar Kroger, Ralphs, Food 4 Less, or Foods Co. store located in California, as outlined in greater detail herein.

## II. JURISDICTION AND VENUE

9. There is federal subject matter jurisdiction over this matter under the Class Action Fairness Act, in that this is a proposed class action, there are more than 100 members of the proposed class, Plaintiff and the proposed class members are citizens of different states than Kroger, and the amount in controversy is more than $5 million.

10. This Court has personal jurisdiction over Defendant Kroger because: (1) Kroger regularly conducts business in California; (2) the facts underlying the claims alleged herein took place in California; and/or (3) Kroger has committed tortious acts within the State of California (as alleged, without limitation, throughout this Complaint).

11. Indeed, Kroger owns and operates approximately 300 Kroger, Ralphs, Food 4 Less, and Foods Co. retail stores in California, including in this district, in which it advertises, markets, and sells the complained-of products to Plaintiff and the class.

## III. THE PARTIES

12. Plaintiff Tiera Nance resides in Gardena, California.

13. Like all members of the proposed class, Plaintiff purchased one or more Kroger®, Private Selection®, Simple Truth®, and/or Simple Truth Organic® branded products that stated **"No Preservatives"** or **"No Artificial Preservatives"** on the front of the package, yet listed one or more additives that function as a preservative in the list of ingredients on the reverse of the package. Like all class members, Plaintiff purchased such products at a Kroger, Ralphs, Food 4 Less, or Foods Co. brick-and-mortar retail store in California within the applicable class period.

14. Most recently, Plaintiff purchased (a) Kroger® Rich N Creamy Macaroni and Cheese and (b) Kroger® Three Cheese Shells Macaroni and Cheese at the Food 4 Less Store located at 1299 W. Artesia Boulevard, Gardena, California 90248, on or about August 4, 2023. <u>See</u> Attachment B hereto, Photos of Products purchased by Plaintiff.

15. Defendant Kroger is an Ohio corporation headquartered in Cincinnati, Ohio. Defendant Kroger owns and operates numerous Kroger, Ralphs, Food 4 Less, and Foods Co. retail stores throughout the United States, including approximately 300 stores in California.

## IV. <u>CLASS ACTION ALLEGATIONS</u>

16. Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23, on behalf of a proposed class defined as:

> **All California citizens who, within the applicable statute of limitations, purchased at a brick-and-mortar Kroger, Ralphs, Food 4 Less, or Foods Co. retail store in California one or more Kroger®, Private Selection®, Simple Truth® and/or Simple Truth Organic® branded products which stated "No Preservatives" or "No Artificial Preservatives" on the front of the package, yet listed one or more of the following ingredients on the reverse of the package: citric acid, lactic acid, ascorbic acid, sodium citrate, sodium phosphate, disodium phosphate, natamycin, or sodium acid pyrophosphate.**

17. Plaintiff also brings this action as a class action pursuant to Fed. R. Civ. P. 23, on behalf of a proposed sub-class defined as:

> **All California citizens who, within the applicable statute of limitations, purchased one or more of the products listed in Attachment A at a brick-and-mortar Kroger, Ralphs, Food 4 Less, or Foods Co. store in California.**

18. Plaintiff also brings this action as a class action pursuant to Fed. R. Civ. P. 23, on behalf of a proposed sub-class defined as:

> **All California citizens who, within the applicable statute of limitations, purchased at a brick-and-mortar Kroger, Ralphs, Food 4 Less, or Foods Co. retail store in California one or more Kroger®, Private Selection®, Simple Truth® and/or Simple Truth Organic® branded products which stated "No Preservatives" or "No Artificial Preservatives" on the front of the package, yet listed citric acid as an added ingredient on the reverse of the package.**

19. Plaintiff also brings this action as a class action pursuant to Fed. R. Civ. P. 23, on behalf of a proposed sub-class defined as:

> **All California citizens who, within the applicable statute of limitations, purchased (a) Kroger® Rich N Creamy Macaroni and Cheese and/or (b) Kroger® Three Cheese Shells Macaroni and Cheese at a brick-and-mortar Kroger, Ralphs, Food 4 Less, or Foods Co. store in California.**

20. Specifically excluded from the class and subclasses are Kroger, any entity in which Kroger has a controlling interest or which has a controlling interest in Kroger, Kroger's agents and employees and attorneys, the bench officers to whom this civil action is assigned, and the members of each bench officer's staff and immediate family.

21. The members of the class and subclasses for whose benefit this action is brought are each so numerous that joinder of all members is impracticable.

22. Upon information and belief, the proposed class and subclasses are each composed of at least 1,000 persons.

23. No violations alleged in this complaint are a result of any oral communications or individualized interaction of any kind between class members and Kroger.

24. Rather, all claims in this matter arise from the affirmative, false, written statements on the packaging and labels of the subject products, as outlined in detail herein.

25. There are common questions of law and fact affecting the rights of all class members, including, inter alia, the following:

a. Whether the subject products state **"No Preservatives"** and/or **"No Artificial Preservatives"** on the packaging;

b. Whether the products in fact contain preservatives or artificial preservatives;

c. Whether Kroger's act in placing uniform, written statements on the packaging and labels of the relevant products, prominently and boldly stating **"No Preservatives"** and/or **"No Artificial Preservatives,"** was a false, affirmative statement of fact or was misleading;

d. Whether Kroger was aware that the preservatives listed in the product ingredients on the back of product packages were in fact preservatives;

e. The date Kroger became aware that the preservatives listed in the product ingredients on the back of product packages were in fact preservatives;

f. Whether Kroger intentionally, negligently, or recklessly disseminated false and misleading information by labeling the products as containing **"No Preservatives"** and/or **"No Artificial Preservatives"** when the products in fact contained preservatives;

g. Whether the presence of preservatives in the products is a material fact;

h. Whether Plaintiff and the class were adequately informed that the products contained preservatives;

i. Whether Kroger's conduct was unfair and deceptive;

j. Whether Kroger's conduct, as alleged herein, violated the California Consumers Legal Remedies Act, California Civil Code § 1750, *et seq*.;

k. Whether Kroger's conduct, as alleged herein, violated the California False Advertising Law, California Business & Professions Code § 17500, *et seq*.;

l. Whether Kroger's conduct, as alleged herein, violated the California Unfair Competition Law, California Business & Professions Code § 17200 *et seq*.;

m. Whether Kroger's conduct, as alleged herein, constituted a breach of warranty under California law;

n. Whether Kroger was unjustly enriched as a result of the conduct alleged herein;

o. Whether Plaintiff and the class have suffered injury and/or have lost money or property as a result of Kroger's false and misleading conduct; and

p. Whether Plaintiff and the class are entitled to injunctive relief, restitution, actual and punitive damages, and attorney fees and costs.

26. Plaintiff is a member of the class and subclasses she seeks to represent.

27. The claims of Plaintiff are not only typical of all class members, they are identical, as Plaintiff and class members all sustained injury as a result of Kroger's practices and schemes.

28. All claims of Plaintiff and the class and subclasses arise from the identical false, written statements of affirmative fact on the product labels as described herein.

29. All claims of Plaintiff and the class and subclasses are based on the same legal theories.

30. Plaintiff has no interest antagonistic to, or in conflict with, the class.

31. Plaintiff will thoroughly and adequately protect the interests of the class and subclasses, having retained qualified and competent legal counsel to represent herself and the class and subclasses.

32. Kroger has acted and refused to act on grounds generally applicable to the class and subclasses, thereby making appropriate injunctive and declaratory relief for the class and subclasses as a whole.

33. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual members of the class and subclasses which would establish incompatible standards of conduct for Kroger.

34. A class action is not only the superior method for the fair and efficient adjudication of this controversy, it is the only practical, available method since, inter alia, the damages suffered by each class member were less than $5.00 for each product purchased and, as such, individual actions are not economically feasible. Moreover, individual litigation would add administrative burden on

the courts, increasing the delay and expense to all parties and to the court system. In contrast, a single adjudication would create economies of scale and comprehensive supervision by a single judge.

35. Common questions will predominate, and there will be no unusual manageability issues.

36. The nature of Kroger's misconduct is non-obvious and/or obscured from public view, and neither Plaintiff nor the members of the class and subclasses could have, through the use of reasonable diligence, learned of the accrual of their claims against Kroger at an earlier time. This Court should, at the appropriate time, apply the discovery rule to extend any applicable limitations period (and the corresponding class period) to the date on which Kroger first began perpetrating its false advertising scheme alleged herein.

## V. KROGER'S FALSE ADVERTISING SCHEME

37. Consumer demand for foods marketed as "clean," "natural," and/or free from artificial additives has grown exponentially over the past decade.

38. Many consumers actively seek products that avoid preservatives or other chemical additives due to health concerns, ingredient transparency preferences, and/or perceptions about food processing.

39. Further, recent studies suggest that certain commonly used food preservative additives, such as citric acid, may exert adverse health effects in humans, including hypertension, cardiovascular disease, heart attack, and stroke.[1]

40. Consequently, claims that a product has **"No Preservatives"** or **"No Artificial Preservatives"** can significantly influence a consumer's purchasing decisions. These representations allow companies to differentiate products within highly competitive grocery markets and attract consumers seeking minimally processed foods.

41. Indeed, many consumers are willing to pay a price premium for "clean" food products that are marketed and advertised – and thus perceived by the consumer – as preservative-free.

---

[1] See, e.g., Anais Hasenbohler, et al., Preservative Food Additives, Hypertension, and Cardiovascular Diseases: The NutriNet-Sante Study, European Heart Journal, ehag308, May 20, 2026 (available at https://academic.oup.com/eurheartj/advance-article/doi/10.1093/eurheartj/ehag308/8679203) (last visited May 21, 2026).

42. Kroger is one of the largest grocery and supermarket retail chains in the United States. Headquartered in Cincinnati, Ohio, Kroger is publicly traded on the New York Stock Exchange, operates nearly 2,800 stores and employs over 409,000 associates nationwide, and generated approximately $147.6 billion in sales in 2025.

43. Kroger maintains a particularly strong presence in California, where it operates approximately 300 brick and mortar retail stores, primarily under the names Ralphs, Food 4 Less, and Foods Co. Consumers also can purchase grocery and household products from Kroger online via www.Kroger.com, www.Ralphs.com, and/or third-party delivery services like Instacart.

44. Alongside its nationwide retail operations, Kroger also is engaged in the design, formulation, manufacture, marketing, sale, and distribution of private-label food products. Kroger's private label portfolio includes widely distributed brands that are sold in Kroger stores and online, such as Kroger®, Private Selection®, Simple Truth®, and Simple Truth Organic®, and that span multiple food categories including frozen foods, packaged meals, pantry staples, and fresh items. Kroger sells these private-label products in all of its stores and online at the same prices.

45. Many of these private label products are sold in packages that advertise in prominent, bold type on the package front that the products contain **"No Preservatives"** or **"No Artificial Preservatives."**

46. Despite this representation, the list of ingredients on the reverse side of these same product packages reveal – in much smaller, non-bolded type – the presence of additives which are widely used in food manufacturing for preservative or preservative-like functions, including citric acid, lactic acid, ascorbic acid, sodium citrate, sodium phosphate, disodium phosphate, natamycin, and sodium acid pyrophosphate. These ingredients, inter alia, stabilize food structure, maintain texture, inhibit microbial growth, or extend shelf life, functions that consumers commonly associate with preservatives.

47. The federal Food, Drug, and Cosmetic Act ("FDCA") governs the labeling of food products in the United States.

48. The FDCA prohibits the sale of any food products whose labeling is false or misleading in any material respect. See 21 U.S.C. § 343(a)(1), providing that a food product is

misbranded if its labeling is **"false or misleading in any particular"**; 21 U.S.C. § 331(a)-(b), prohibiting the **"misbranding of any food"**, as well as the **"introduction or delivery … into interstate commerce"** of any misbranded food.

49. FDA regulations define a **"chemical preservative"** as any chemical substance that, when added to food, **"tends to prevent or retard deterioration."** See 21 C.F.R. §101.22(a)(5).

50. Under the FDA's definition, the above-listed additives – citric acid, lactic acid, ascorbic acid, sodium citrate, sodium phosphate, disodium phosphate, natamycin, and sodium acid pyrophosphate – which according to Kroger's own ingredient lists are present in Kroger's food products, are in fact preservatives because they are added to such products **"to prevent or retard [the products'] deterioration,"** among other things.

51. Consequently, Kroger's claims on its product packaging that these products contain **"No Preservatives"** or **"No Artificial Preservatives"** are false and misleading.

52. Additionally, the FDA recognizes that front-of-package labeling claims – i.e., the representation in prominent, bold type that a product contains **"No Preservatives"** or **"No Artificial Preservatives"** – play an important role in shaping a consumer's understanding of a product and are intended to help consumers quickly identify foods consistent with their preferred or recommended dietary patterns. Even where ingredients are technically disclosed in the ingredient list on the reverse side of a product's package, the front-side labeling may still create a misleading impression if the overall presentation suggests characteristics inconsistent with the product's composition.

53. Indeed, FDA guidance to the food production industry states:

> **FDA's research has found that with FOP [Front of Package] labeling, people are less likely to check the Nutrition Facts label on the information panel of foods (usually, the back or side of the package). It is thus essential that both the criteria and symbols used in front-of-package and shelf-labeling systems be nutritionally sound, well-designed to help consumers make informed and healthy food choices, and not be false or misleading. … It is important to note that nutrition-related FOP and shelf labeling, while currently voluntary, is subject to the provisions of the Federal Food, Drug,**

> **and Cosmetic Act that prohibit false or misleading claims and restrict nutrient content claims to those defined in FDA regulations. <u>Therefore, FOP and shelf labeling that is used in a manner that is false or misleading misbrands the products it accompanies.</u>** (emphasis added).[2]

54. This is particularly significant for the products at issue, which are touted as clean and natural preservative-free products for which consumers, specifically including Plaintiff and the class members, were forced to pay a premium price.

55. Plaintiff's investigation has identified thirty-six (36) Kroger®, Private Selection®, Simple Truth®, and Simple Truth Organic® branded products (the "Products"), each with a distinct Stock Keeping Unit number ("SKU"), which were formulated, manufactured, and sold by Kroger and which falsely claimed **"No Preservatives"** or **"No Artificial Preservatives"** on the front of their packages, but in fact contained one or more of the above-listed preservatives as disclosed in the ingredient list on the package reverse.

56. Attachment A to Plaintiff's Complaint, which is incorporated fully herein, contains a list of each such Product, along with pictures of the Product packaging and ingredient information.

57. As set forth in Attachment A, these Products include, <u>inter</u> <u>alia</u>, macaroni and cheese, rice products, frozen meals, canned soup, and salad dressing.

58. The fact that these Products appear across multiple segments of Kroger's private label portfolio demonstrates that the challenged **"No Preservatives"** and **"No Artificial Preservatives"** representations were deployed consistently across different product categories and brand lines.

59. For example, Kroger® Classic Macaroni and Cheese, a packaged meal Product sold under Kroger's private label brand, prominently displays the representation **"No Artificial Preservatives"** on the front of its packaging. However, the ingredient list on the back of the product package discloses the presence of sodium phosphate and lactic acid, which additives are preservatives and/or artificial preservatives commonly used in processed foods to regulate pH, stabilize texture, and

---

[2] <u>See</u> FDA Human Foods Program <u>Guidance for Industry: Letter Regarding Point of Purchase Food Labeling</u>, Dkt. No. FDA-2020-D-1921 (Oct. 2009) (available at: <u>https://www.fda.gov/regulatory-information/search-fda-guidance-documents/guidance-industry-letter-regarding-point-purchase-food-labeling</u>) (last visited May 28, 2026).

maintain product stability (i.e., **"prevent or retard deterioration,"** see 21 C.F.R. §101.22(a)(5)) during preparation and storage. See Figures 1 and 2 below.

**Figure 1**




**Figure 2**


18 FoodHealth Score Learn More

Ingredients

Cooked enriched macaroni (water, semolina wheat enriched with ferrous sulfate, niacin, thiamin mononitrate, riboflavin, folic acid), water, milk, Cheddar and Colby and Swiss and enzyme modified cheeses (part skim and whole milk, pasteurized milk, cheese cultures, salt, enzymes, annatto [for color]). Contains 2% or less of: whey, sodium phosphate, salt, milk fat, modified corn starch, lactic acid, xanthan gum, carotenal (for color). CONTAINS: WHEAT, MILK, SOY.MAY CONTAIN: EGG.

Allergen Info

Free from Tree Nuts and Their Derivatives.

Disclaimer

60. Similarly, Kroger's Simple Truth Organic® Tomato Basil Soup prominently displays the representation **"No Preservatives"** on the front of its packaging. However, the Product's ingredient list discloses the presence of citric acid, a preservative additive which is commonly used in processed foods to regulate acidity, inhibit microbial growth, and maintain product stability during storage (i.e., **"prevent or retard deterioration,"** see 21 C.F.R. §101.22(a)(5)).[3] See Figure 3 below.

**Figure 3**




[3] Indeed, the FDA has specifically classified citric acid as a preservative. See FDA Overview of Food Ingredients, Additives and Colors, at 2-3 (April 2010) (available at https://www.fda.gov/files/food/published/Food-Ingredients-and-Colors-%28PDF%29.pdf) (last accessed May 28, 2026).

61. Kroger, as the developer, designer, manufacturer, marketer, and exclusive seller of the Products at issue, has been or should have been aware – from the time of these Products' inception – that the Products in fact contain preservatives.

62. Indeed, Kroger made the decision to add preservatives to each Product's formulation, in fact added preservatives to each Product, and listed such preservatives in the ingredient list for each Product.

63. Despite this, Kroger opted to falsely advertise and market these Products as containing **"No Preservatives"** or **"No Artificial Preservatives,"** boldly and prominently on the front of the Products' packaging.

64. Kroger did this so that it could sell these falsely-labeled Products at a premium price to California consumers.

65. Kroger uniformly advertises these Products as containing **"No Preservatives"** or **"No Artificial Preservatives"** in order to create the illusion that the Products are natural and free from additives and preservatives. The heart of Kroger's marketing plan is to deceive customers into believing that they are purchasing Products that are healthier and more wholesome than they actually are, and thus pay a higher, premium price for Products that in fact are not worth it.

66. As a direct and proximate result of Kroger's acts and omissions, all consumers who have purchased a subject Product from a Kroger store have been harmed, have suffered an injury in fact, and have lost money or property.

67. Kroger's false advertising scheme has harmed all of its customers by fraudulently increasing demand for the Products, thereby shifting the demand curve and enabling Kroger to charge its customers more than it otherwise could have charged for its Products and to generate more sales than it otherwise would have generated.

68. The false or misleading nature of Kroger's marketing claims were at all relevant times masked or concealed or hidden such that an ordinary consumer exercising reasonable care under all the circumstances would not have known of or discovered their false or misleading nature.

69. Kroger continues to sell these Products to this day, with the same written, false, uniformly-worded statements on the Product labels outlined herein and on Attachment A hereto, in

its stores throughout California. There is no reason to believe that Kroger will voluntarily and permanently cease its unlawful practices without Court intervention. Moreover, in the unlikely event that Kroger were to cease its unlawful practices, Kroger can and/or is likely to re-commence these unlawful practices.

70. In acting toward consumers and the general public in the manner alleged herein, Kroger acted with and was guilty of malice, fraud, and/or oppression and/or acted in a manner with a strong and negative impact upon Plaintiff, the class, and the public.

## VI. PLAINTIFF'S FACTUAL ALLEGATIONS

71. Plaintiff Tiera Nance is a frequent shopper at Kroger-owned Ralphs and Food 4 Less retail stores in California, and, within the applicable class period, has purchased many of the Products listed in Attachment A hereto – Kroger®, Private Selection®, Simple Truth®, and Simple Truth Organic® branded products which stated **"No Preservatives"** or **"No Artificial Preservatives"** on the front of the package, yet (unbeknownst to Plaintiff) listed one or more additives which function as a preservative in the list of ingredients on the reverse of the package.

72. Most recently, Plaintiff purchased (a) Kroger® Rich N Creamy Macaroni and Cheese and (b) Kroger® Three Cheese Shells Macaroni and Cheese at the Food 4 Less Store located at 1299 W. Artesia Boulevard, Gardena, California 90248, on or about August 4, 2023. See Attachment B hereto, Photos of Products purchased by Plaintiff.

73. Like all subject Products, the Macaroni and Cheese Products purchased by Plaintiff were represented – in prominent, bold language on the front of their packages – to contain **"No Preservatives"** or **"No Artificial Preservatives."** See Figures 4 and 5, Photos of the front of the Macaroni and Cheese Products' packaging stating **"NO ARTIFICIAL Preservatives."**

**Figure 4**




**Figure 5**




74. Yet the Products in fact contained preservatives, as disclosed in much smaller type on the back of the Product package. See Figure 6, Photo of the back of the Macaroni and Cheese Products' packaging listing **"CITRIC ACID", "LACTIC ACID,"** and **"SODIUM PHOSPHATE"** as **"INGREDIENTS."**

**Figure 6**



75. Indeed, the FDA has specifically identified **"citric acid"** as a **"Preservative"** commonly used, inter alia, to **"Prevent food spoilage …; slow or prevent changes in color, flavor, or texture and delay rancidity …; maintain freshness."**[4]

76. Consequently, Kroger's representation that the Macaroni and Cheese Products purchased by Plaintiff contained **"No Artificial Preservatives"** was false, misleading, and deceptive.

77. Plaintiff in fact was deceived by Kroger's misrepresentations. Plaintiff reasonably relied on Kroger's misrepresentations in purchasing the Products, and such representations were material to Plaintiff's purchase. Indeed, if Plaintiff had known the truth about the Products – that they in fact contained preservatives and artificial preservatives – then she would not have purchased the Products, would not have paid as much for the Products, and/or would have otherwise acted differently.

78. These misrepresentations by Kroger are material misrepresentations, in that they are the type of representations on which an ordinary prudent person would rely upon in conducting his or her affairs.

79. As a direct and proximate result of Kroger's acts and omissions, Plaintiff was harmed, suffered an injury in fact, and lost money or property.

80. Kroger's false advertising harmed Plaintiff by causing her to purchase Products she otherwise would not have purchased and/or to pay more than she otherwise would have paid for such products. Plaintiff did not enjoy the promised benefits of the Products that Kroger promised – that they contained **"No Preservatives"** or **"No Artificial Preservatives"** – and the Products were not, in fact, worth as much as Plaintiff paid for them.

81. Indeed, similar products that are sold in the marketplace and that do not make any **"No Preservative"** claims in fact sell for lower prices. For example, Walmart sells its Great Value® brand Macaroni and Cheese for $0.64 for a 7.25 oz box – which product asserts no representation that it contains **"No Preservatives."** Similarly, Target sells its Market Pantry brand Macaroni and Cheese

---

[4] See FDA Overview of Food Ingredients, Additives and Colors, at 2-3 (April 2010) (available at https://www.fda.gov/files/food/published/Food-Ingredients-and-Colors-%28PDF%29.pdf) (last accessed May 28, 2026).

for $0.59 for a 7.25 oz box. These products are sold for **$0.25 and $0.30 <u>less</u> <u>than</u>** the premium price of $0.89 that Plaintiff paid for Kroger's falsely advertised, purportedly preservative free Macaroni and Cheese products. In other words, Plaintiff paid a **price premium of between <u>39% and 51%</u>** for Kroger's misbranded Macaroni and Cheese products.

82. Moreover, Plaintiff and the class were deprived of the benefit of their bargain, as they paid for products which purportedly contained **"No Preservatives,"** but in fact received Products that contained preservatives.

83. Plaintiff has a legal right to rely now, and in the future, on the truthfulness and accuracy of Kroger's representations regarding the preservative content of its products. Plaintiff will be harmed if, in the future, she is left to guess as to whether Kroger is selling products that in fact contain preservatives or not.

84. Indeed, Plaintiff continues to shop at Kroger's stores in California, she continues to purchase products that Kroger advertises as containing **"No Preservatives"** and **"No Artificial Preservatives,"** and she will do so in the future. Plaintiff has the right to know if these products – for which she will pay a price premium – actually contain preservatives or not.

85. When Plaintiff purchases such a Product again from a Kroger retail store, without Kroger having changed its unlawful and deceptive conduct alleged herein, Plaintiff will be harmed on an ongoing basis and/or will be harmed more in the future.

## VII. <u>CAUSES OF ACTION</u>

### <u>COUNT I</u>

### Violation of the Consumers Legal Remedies Act

### California Civil Code § 1750, *et seq.*

86. Plaintiff repeats and re-alleges the allegations in paragraphs 1-85 of this complaint as if set forth fully herein.

87. This cause of action is brought pursuant to the California Consumers Legal Remedies Act, California Civil Code § 1750, et seq. (the "CLRA"), because the actions of Defendant Kroger, and its conduct described herein, constitute transactions that have resulted in the sale of goods to consumers in California.

88. Plaintiff brings this claim in her individual capacity, in her capacity as a private attorney general seeking the imposition of public injunctive relief, and/or as a representative of the putative class and subclasses.

89. Kroger is a "person," as defined by California Civil Code § 1761(c).

90. Plaintiff and the class members are each a "consumer" as defined by California Civil Code § 1761(d).

91. The Products are "goods" within the meaning of California Civil Code § 1761(a).

92. The purchases by Plaintiff and the class constitute a "transaction," as defined by California Civil Code § 1761(e).

93. Kroger intended to sell the Products to, inter alia, Plaintiff and the class members.

94. The unlawful methods, acts or practices alleged herein to have been undertaken by Kroger were all committed intentionally and knowingly. The unlawful methods, acts or practices alleged herein to have been undertaken by Kroger did not result from a bona fide error notwithstanding the use of reasonable procedures adopted to avoid such error.

95. With regard to this count of the pleading which alleges one or more violations of the CLRA, venue is proper in the Central District of California because, without limitation, Plaintiff resides and purchased the products in question in this district. In accordance with Cal. Civ. Code § 1780(d), Plaintiff is filing a declaration of venue, attached hereto as Attachment C to this Complaint.

96. The acts and omissions of Kroger constitute unfair, deceptive, and misleading business practices in violation of Civil Code § 1770(a).

97. Specifically, Kroger violated the CLRA in at least the following respects:

a. in violation of § 1770(a)(5), Kroger represented that the Products had characteristics and benefits (i.e., that they contained **"No Preservatives"** or **"No Artificial Preservatives"**) which the Products did not actually possess;

b. in violation of § 1770(a)(7), Kroger represented that the Products were of a particular standard, quality, or grade (i.e. that they contained **"No Preservatives"** or **"No Artificial Preservatives"**), when the Products actually were not;

c. in violation of § 1770(a)(9), Kroger advertised the Products on their label as containing **"No Preservatives"** or **"No Artificial Preservatives,"** with intent not to sell the Products as advertised, because the Products in fact contained preservatives;

d. in violation of § 1770(a)(13), Kroger failed to disclose material facts about the Products (i.e., that they contained preservatives); and

e. in violation of § 1770(a)(16), Kroger represented that the Products have been supplied in accordance with previous representations (i.e., that they contained **"No Preservatives"** or **"No Artificial Preservatives"**), which representations the Products did not meet.

98. Kroger's misrepresentations and nondisclosures deceive and have a tendency and ability to deceive the general public.

99. Kroger's misrepresentations and nondisclosures are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions. Indeed, the value of the Products are significantly reduced due to the presence of preservatives therein.

100. As a direct and proximate result of these violations, Plaintiff and the class members suffered injury-in-fact and lost money.

101. As a result of Kroger's misrepresentations, Plaintiff and the class members made purchases they otherwise would not have made and/or paid more than they otherwise would have paid for the products they purchased had they known the material facts which were hidden by Kroger.

102. Kroger's false advertising scheme has harmed all of its customers by fraudulently increasing demand for its Products, thereby shifting the demand curve and enabling Kroger to charge its customers more than it otherwise could have charged and to generate more sales than it otherwise would have generated.

103. Kroger's conduct as alleged herein caused substantial injury to Plaintiff, class members, and the public. Kroger's conduct is ongoing and will continue and recur absent a permanent injunction. Accordingly, Plaintiff and the class members seek an order enjoining Kroger from committing the complained-of practices. Plaintiff also seeks attorneys' fees and costs.

104. Plaintiff also individually seeks public injunctive relief under the CLRA to protect the general public from Kroger's false advertisements and omissions.

105. Plaintiff and the general public lack an adequate remedy at law for the totality of the relief sought herein. Plaintiff and the class are entitled to know whether the products they purchase from Kroger are mislabeled, and whether or not such products actually contain preservatives.

106. In order to provide a full remedy for Plaintiff and the class going forward, and to protect future purchasers, Kroger must be required to truthfully advertise the content of its products.

107. In accordance with California Civil Code § 1782(a), on July 21, 2026, Plaintiff's counsel served Kroger with notice of its CLRA violations by certified mail, return receipt requested. A true and correct copy of that notice is attached hereto as Attachment D. If Kroger fails to provide appropriate relief for its CLRA violations within 30 days of Plaintiff's notification letter, Plaintiff will amend this complaint to seek compensatory and exemplary damages as permitted by Cal. Civ. Code §§ 1780 and 1782(b).

**COUNT II**

**Violation of California's False Advertising Law**

**California Business and Professions Code § 17500, *et seq*.**

108. Plaintiff repeats and re-alleges the allegations in paragraphs 1-85 of this complaint as if set forth fully herein.

109. Plaintiff asserts this cause of action for violations of California Business and Professions Code § 17500, et seq. for misleading and deceptive advertising against Kroger.

110. Plaintiff brings this claim in her individual capacity, in her capacity as a private attorney general seeking the imposition of public injunctive relief, and/or as a representative of the putative class and sub-classes.

111. Kroger has engaged in false or misleading advertising in violation of California's statutory False Advertising Law ("FAL").

112. Kroger sold the Products to Plaintiff and the class members in California.

113. Kroger's conduct as described herein is misleading, and/or has a capacity, likelihood or tendency to deceive reasonable consumers. *See, e.g.*, *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951

(2002) (UCL and FAL prohibit "not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public" (citation omitted)); *Hansen v. Newegg.com Americas, Inc.*, 25 Cal. App. 5th 714, 722 (2018) (same); *People v. Overstock.Com, Inc.*, 12 Cal. App. 5th 1064, 1078 (2017) (same).

114. By the facts alleged herein, Kroger, with intent directly or indirectly to dispose of personal property or to perform services, or to induce the public to enter into any obligation relating thereto, makes, disseminates, has made or disseminated, causes to be made or disseminated, and/or has caused to be made or disseminated, before the public in the State of California, in newspaper or other publication, or other advertising device, or by public outcry or by proclamation, or in any other manner or means, including over the Internet, statements concerning that personal property or those services, and/or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which are untrue or misleading and which are known (or which by the exercise of reasonable care should be known) to be untrue or misleading.

115. Independently, Kroger has made or disseminated or caused to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised with the characteristics stated therein, or as so advertised.

116. Specifically, Kroger advertised the Products as containing **"No Preservatives"** or **"No Artificial Preservatives"** when the Products in fact contain preservatives and/or artificial preservatives.

117. Kroger committed such violations of the False Advertising Law with actual knowledge that its advertising was untrue or misleading, or Kroger, in the exercise of reasonable care, should have known that its advertising was untrue or misleading.

118. Plaintiff and the class members reasonably relied on Kroger's representations and/or omissions made in violation of the False Advertising Law.

119. As a direct and proximate result of these violations, Plaintiff and the class members suffered injury-in-fact and lost money, in that Plaintiff and the class members made purchases they

otherwise would not have made, and/or paid more than they otherwise would have paid for the products they purchased.

120. Kroger's false advertising scheme has harmed all of its customers by fraudulently increasing demand for its products, thereby shifting the demand curve and enabling Kroger to charge its customers more than it otherwise could have charged and to generate more sales than it otherwise would have generated.

121. Kroger should be ordered to disgorge or make restitution of all monies improperly accepted, received or retained as a result of its unlawful conduct.

122. Kroger's conduct has caused substantial injury to Plaintiff, class members, and the public. Kroger's conduct is ongoing and will continue and recur absent a permanent injunction. Accordingly, Plaintiff seeks an order enjoining Kroger from committing such violations of the FAL. Plaintiff further seeks an order granting restitution to Plaintiff and the class and subclasses in an amount to be proven at trial. Plaintiff further seeks an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

123. Absent injunctive relief, Kroger will continue to injure Plaintiff and the class members. Kroger's misrepresentations and omissions are ongoing, as Kroger continues to falsely advertise its misbranded Products, to the detriment of Plaintiff and the class members. Even if such conduct were to cease, it is behavior that is capable of repetition or reoccurrence by Kroger.

124. Plaintiff also individually seeks public injunctive relief under the FAL to protect the general public from Kroger's misleading statements and omissions.

## COUNT III

### Violation of California's Unfair Competition Law

### California Business and Professions Code § 17200, *et seq.*

125. Plaintiff repeats and re-alleges the allegations in paragraphs 1-85 of this complaint as if set forth fully herein.

126. Plaintiff brings this claim in her individual capacity, in her capacity as a private attorney general seeking the imposition of public injunctive relief, and/or as a representative of the putative class and subclasses.

127. Kroger's acts and omissions alleged herein constitute unfair competition and/or unlawful, unfair, or fraudulent business practices in violation of California Business and Professions Code § 17200, *et seq.* (the "Unfair Competition Law" or "UCL").

128. Kroger's conduct and omissions alleged herein are immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff and the class members. There is no utility to Kroger's conduct, and even if there were any utility, it would be significantly outweighed by the gravity of the harm to consumers caused by Kroger's conduct alleged herein.

129. Kroger's conduct and omissions alleged herein also violate California public policy, including as such policy is reflected in Cal. Civ. Code § 1750, *et seq.* and Cal. Civ. Code §§ 1709-1710.

130. By its conduct and omissions alleged herein, Kroger has violated the "unlawful" prong of the UCL, including by making material misrepresentations and omissions in violation of Cal. Bus. & Prof. Code § 17500, *et seq.* and Cal. Civ. Code § 1750, *et seq.*; and engaging in deceit in violation of Cal Civ. Code §§ 1709-1710, *et seq.*

131. Kroger has violated the "fraudulent" prong of the UCL by advertising its Products as containing **"No Preservatives"** and/or **"No Artificial Preservatives"** when the Products in fact contain added preservatives and/or artificial preservatives.

132. Kroger's material misrepresentations and nondisclosures were likely to mislead reasonable consumers, existing and potential customers, and the public.

133. Kroger's misrepresentations and nondisclosures deceive and have a tendency to deceive the general public and reasonable consumers, and therefore were unfair and fraudulent.

134. Kroger's misrepresentations and nondisclosures are material, such that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

135. Plaintiff and members of the class reasonably relied on Kroger's material misrepresentations and nondisclosures, and would have acted differently if they had known the truth.

136. By its conduct and omissions alleged herein, Kroger received more money from

Plaintiff and the class members than it should have received, and that money is subject to restitution.

137. As a direct and proximate result of Kroger's unfair, unlawful, and fraudulent conduct, Plaintiff and the class members lost money.

138. Plaintiff and the class members made purchases they otherwise would not have made, and/or paid more than they otherwise would have paid for the products they purchased but for Kroger's omissions and deceptive conduct.

139. Kroger's false advertising scheme has harmed all of its customers by fraudulently increasing demand for its products, thereby shifting the demand curve and enabling Kroger to charge its customers more than it otherwise could have charged and to generate more sales than it otherwise would have generated.

140. Kroger's conduct has caused substantial injury to Plaintiff, class members, and the public. Kroger's conduct is ongoing and will continue and recur absent a permanent injunction. Accordingly, Plaintiff seeks an order enjoining Kroger from committing such unlawful, unfair, and fraudulent business practices. Plaintiff further seeks an order granting restitution to Plaintiff and the class and subclasses in an amount to be proven at trial. Plaintiff further seeks an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

141. Absent injunctive relief, Kroger will continue to injure Plaintiff and the class members. Kroger's misrepresentations and omissions are ongoing. Moreover, even if such conduct were to cease, it is behavior that is capable of repetition or reoccurrence by Kroger.

142. Plaintiff individually seeks public injunctive relief under the UCL to protect the general public from Kroger's deceptive conduct and omissions.

**COUNT IV**

**Breach of Express Warranty**

**Under California Common Law**

143. Plaintiff repeats and re-alleges the allegations in paragraphs 1-85 of this complaint as if set forth fully herein.

144. By operation of California law, Kroger entered into a contract with Plaintiff and each class member when they purchased a Product at a Kroger store located in California.

145. By operation of California law, the terms of these contracts included an express warranty incorporating the identical affirmation, promise and description by Kroger regarding the Products purchased, made in writing on the Products' front labels, that the Products contained **"No Preservatives"** or **"No Artificial Preservatives."**

146. The relevant terms and language of the express warranty between Kroger and each class member are identical.

147. Kroger has breached the terms of this express warranty in an identical manner for each class member because the Products actually contained preservatives and therefore did not, and could not, conform to the affirmation, promise, and description on the front labels of the Products.

148. As a direct and proximate result of this breach of express warranty by Defendants, each class member has suffered economic loss.

**COUNT V**

**Unjust Enrichment**

**Under California Common Law**

149. Plaintiff repeats and re-alleges the allegations in paragraphs 1-85 of this complaint as if set forth fully herein.

150. Plaintiff and the class members have conferred substantial benefits on Kroger by purchasing the Products, and Kroger has knowingly and willingly accepted and enjoyed these benefits.

151. Kroger either knew or should have known that the payments rendered by Plaintiff and the class members were given and received with the expectation that the Products would be as represented and warranted, in that the Products would contain **"No Preservatives"** or **"No Artificial Preservatives."**

152. Kroger's representations and warranties were false, as the Products in fact contained preservatives and/or artificial preservatives, as set forth in their respective ingredient lists.

153. Under the California common law of unjust enrichment, it would be inequitable for Kroger to retain the benefit of the payments under these circumstances, and such retention constitutes unjust enrichment.

154. Under the law of California, both law and equity demand disgorgement of Kroger's ill-gotten gains.

155. As a direct and proximate result of Kroger's wrongful conduct and unjust enrichment, Plaintiff and the class members are entitled to restitution from Kroger and institution of a constructive trust disgorging all profits, benefits, and other compensation obtained by Kroger from the sale of the Products.

**COUNT VI**

**Permanent Public Injunctive Relief**

**All Statutory, Inherent and Other Authority**

**(Individually)**

156. Plaintiff repeats and re-alleges the allegations in paragraphs 1-85 of this complaint as if set forth fully herein.

157. Plaintiff brings this claim in her individual capacity.

158. Public injunctive relief is a remedy which is authorized and recognized by the laws of California. Public injunctive relief is defined as an injunction which seeks "not to resolve a private dispute but to remedy a public wrong." *Broughton v. Cigna Healthplans of California*, 21 Cal. 4th 1066, 1080 (1999). "Whatever the individual motive of the party requesting injunctive relief, the benefits of granting injunctive relief by and large do not accrue to that party, but to the general public in danger of being victimized by the same deceptive practices as the plaintiff suffered. … In other words, the plaintiff in a CLRA damages action is playing the role of a bona fide private attorney general." *Id.*

159. Three of Plaintiff's claims are brought under California statutes which empower the Court to craft wide-ranging injunctions to benefit consumers at large. "In previous decisions, this court has said that the statutory remedies available for a violation of the Consumers Legal Remedies Act (CLRA; Civ. Code, § 1750, *et seq.*), the unfair competition law (UCL; Bus. & Prof. Code, §

17200, *et seq.*), and the false advertising law (*id.*, § 17500, *et seq.*) include public injunctive relief, *i.e.*, injunctive relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 951 (2017).

160. If not enjoined by order of this Court, Kroger is free to continue its unlawful behavior and injure Plaintiff and consumers through the misconduct alleged herein once more. Kroger has a duty to speak truthfully or in a non-misleading manner.

161. Even after purchasing the Products, Plaintiff and the class members are still subject to ongoing injury in that, with each future purchase of any Product, Plaintiff and the class do not know whether or not such Product in fact contains preservatives.

162. Thus, Plaintiff is currently being harmed and will continue to be harmed going forward by Kroger's conduct.

163. The balance of the equities favors the entry of permanent injunctive relief against Kroger. Plaintiff and the general public will be irreparably harmed absent the entry of permanent injunctive relief against Kroger.

164. A permanent injunction against Kroger is in the public interest. Kroger's unlawful behavior is ongoing and will continue absent the entry of a permanent injunction.

## PRAYER FOR RELIEF

165. In order to prevent injury to the general public, Plaintiff individually requests that the Court enter a public injunction enjoining Kroger from the unlawful practices alleged herein;

166. Further, on behalf of herself and the proposed class and subclasses, Plaintiff requests that the Court order relief and enter judgment against Kroger as follows:

a. Declare this action to be a proper class action, certify the class and subclasses, and appoint Plaintiff and her counsel to represent the class and subclasses;

b. Order disgorgement or restitution, including, without limitation, disgorgement of all revenues, profits and/or unjust enrichment that Kroger obtained, directly or indirectly, from Plaintiff and the members of the class and subclasses or otherwise as a result of the unlawful conduct alleged herein;

c. Permanently enjoin Kroger from the unlawful conduct alleged herein;

d. Retain jurisdiction to police Kroger's compliance with the permanent injunctive relief;

e. Order Kroger to pay damages and restitution to Plaintiff and the class and subclasses in an amount to be proven at trial;

f. Order Kroger to pay attorneys' fees, costs, and pre-judgment and post-judgment interest to the extent allowed by law; and

g. Provide all other relief to which Plaintiff and the class may show themselves justly entitled.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

DATED this 23rd day of July, 2026.

Presented by:

ABIRI LAW, PC

By: /s/ Robert Abiri

Robert Abiri, Esq.
ABIRI LAW, PC
30021 Tomas Street, Suite 300 Rancho
Santa Margarita, CA 92688
T. 949.459.2133
F. 949.534.4367
rabiri@abirilaw.com

Stephen DeNittis, Esq.*
Shane T. Prince, Esq.*
DENITTIS OSEFCHEN PRINCE, P.C.
5 Greentree Centre, Suite 410
525 Route 73 N.
Marlton, New Jersey 08057
T. 856.797.9951
F. 856.797.9978
sdenittis@denittislaw.com
sprince@denittislaw.com

*Attorneys for Plaintiff and the Proposed Classes*

**Pro hac vice application to be submitted*