Robert Abiri, Esq.
ABIRI LAW, PC
30021 Tomas Street, Suite 300
Rancho Santa Margarita, CA 92688
T. 949.459.2133
F. 949.534.4367
rabiri@abirilaw.com

Stephen DeNittis, Esq. (Pro Hac Vice forthcoming)
Shane T. Prince, Esq. (Pro Hac Vice forthcoming)
DeNITTIS OSEFCHEN PRINCE, P.C.
5 Greentree Centre
525 Route 73 North, Suite 410
Marlton, New Jersey 08057
T. 856.797.9951
F. 856.797.9978
sdenittis@denittislaw.com
sprince@denittislaw.com

*Attorneys for Plaintiff and the Proposed Classes*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

TIERA NANCE, for Herself, as Private Attorney General, and/or on Behalf of All Others Similarly Situated,

Plaintiff,

v.

THE KROGER CO.,

Defendant.

Case No. 2:26-cv-08090-GW-MBK

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Date: December 3, 2026
Time: 8:30 a.m.
Dept.: Courtroom 9D

Assigned to the Hon. George H. Wu
Action Filed: July 23, 2026

# TABLE OF CONTENTS

**Page(s)**


Introduction....................1

Summary of Argument....................2

Governing Legal Standards....................4

A. Rule 12(b)(6)....................4

B. The "Reasonable Consumer" Test....................4

C. Rule 9(b)....................5

Legal Argument....................6

I. KROGER'S ATTEMPT TO LITIGATE THE SCOPE OF THE PROPOSED CLASS OR CLASSES ON A MOTION TO DISMISS, BEFORE ANY CLASS CERTIFICATION MOTION HAS BEEN FILED AND BEFORE ANY DISCOVERY HAS BEEN TAKEN, SHOULD BE REJECTED AS PREMATURE....................6

II. PLAINTIFF HAS ADEQUATELY PLED RELIANCE AND INJURY SUFFICIENT FOR ARTICLE III AND STATUTORY STANDING....................10

III. PLAINTIFF HAS ADEQUATELY ALLEGED THAT CITRIC ACID, LACTIC ACID, AND SODIUM PHOSPHATE FUNCTION AS PRESERVATIVES IN THE MACARONI AND CHEESE PRODUCTS....................12

IV. DEFENDANT'S ARGUMENT REGARDING THE WORD "ARTIFICIAL" IS A RED HERRING AND WITHOUT MERIT....................15

V. KROGER'S BACK-LABEL ARGUMENT FAILS FOR THE SAME REASON THIS COURT REJECTED IT IN *ANTOSSYAN*....................18

VI. PLAINTIFF'S UNJUST ENRICHMENT CLAIM SHOULD NOT BE DISMISSED WITH PREJUDICE....................19

Conclusion....................20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000 (N.D. Cal. 2012)....7

*Ang v. Bimbo Bakeries USA, Inc.*, No. 13-cv-01196-HSG (N.D. Cal.), 2014 WL 10241822 (N.D. Cal. Mar. 13, 2014)....7

*Antossyan v. Kroger Co.*, No. CV 25-5165-GW-MBKx, 2025 U.S. Dist. LEXIS 202749 (C.D. Cal. Oct. 14, 2025)....passim

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)....4, 5

*Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. 11-CV-02910-EMC (N.D. Cal.)....7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)....4

*Chavez v. Blue Buffalo Co., Ltd.*, No. 18-cv-03459-JSW (N.D. Cal.), 2018 WL 11470404 (N.D. Cal. Nov. 14, 2018)....8

*Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 572 (N.D. Cal. 2013)....9

*Davis v. The Kroger Co.*, No. 2:22-cv-02082-MEMF-(RAOx), 2023 WL 9511156, at *14 (C.D. Cal. Sept. 22, 2023)....7

*Enriques v. Only What You Need, Inc.*, No. 2:24-cv-08969-GW-(BFMx), 2025 U.S. Dist. LEXIS 187170, at *9–10 (C.D. Cal. Sept. 23, 2025)....8, 10

*Forever 21, Inc. v. Seven Lions Inc.*, 2012 WL 12888694, at *2–3 (C.D. Cal. Oct. 18, 2012)....19

*Gumner v. PepsiCo, Inc.*,
2023 WL 9019040, at *4 (C.D. Cal. Aug. 3, 2023)…………………………...12

*Hayes v. Kraft Heinz Co.*,
No. 1:23-cv-16596, 2024 WL 4766319, at *4
(N.D. Ill. Nov. 13, 2024)……………………………………………………14, 15

*Hu v. Herr Foods, Inc.*,
251 F. Supp. 3d 813 (E.D. Pa. 2017)…………………………………………14

*Ivie v. Kraft Foods Global, Inc.*,
2013 WL 685372, at *10 (N.D. Cal. Feb. 25, 2013)…………………………18

*Kasky v. Nike, Inc.*,
27 Cal. 4th 939, 951, 119 Cal. Rptr. 2d 296, 45 P.3d 243 (2002)……………...4

*Kelly v. Beliv LLC*,
640 F. Supp. 3d 286, 296 (S.D.N.Y. 2022)………………………………….13

*Kwikset Corp. v. Superior Ct.*,
51 Cal. 4th 310, 327 (2011)…………………………………………...10, 11, 12

*Linear Tech. Corp. v. Applied Materials, Inc.*,
152 Cal. App. 4th 115, 134-35, 61 Cal. Rptr. 3d 221 (2007)…………………..5

*Melendres v. Arpaio*,
784 F.3d 1254, 1262 (9th Cir. 2015)…………………………………….6, 8, 10

*Mendoza v. Procter & Gamble Co.*,
707 F. Supp. 3d 932, 945–46 (C.D. Cal. 2023)……………………………...8, 9

*Miller v. Ghirardelli Chocolate Co.*,
912 F. Supp. 2d 861 (N.D. Cal. 2012)…………………………………………9

*Moore v. Mars Petcare US, Inc.*,
966 F.3d 1007, 1020 (9th Cir. 2020)……………………………………...10, 12

*Morris v. Mott's LLP*,
2019 WL 948750, at *4 (C.D. Cal. Feb. 26, 2019)…………………………...17

*OSU Student Alliance v. Ray*,
699 F.3d 1053, 1078 (2012)……………………………………………………5

*Parks Sch. of Bus., Inc. v. Symington*,
51 F.3d 1480, 1484 (9th Cir. 1995)…………………………………………4

*Quiroz v. Beaverton Foods, Inc.*,
2019 WL 1473088, at *9 (E.D.N.Y. Mar. 31, 2019)…………………………15

*Rojas-Lozano v. Google, Inc.*,
159 F. Supp. 3d 1101, 1114 (N.D. Cal. 2016)………………………………...12

*Sims v. Campbell Soup Co.*,
2018 U.S. Dist. LEXIS 222535, *16 (C.D.Cal. 2018)………………………..18

*Squeo v. Campbell Soup Co.*,
2024 U.S. Dist. LEXIS 192003………………………………………………14

*Stoner v. Santa Clara Cnty Office of Educ.*,
502 F.3d 1116, 1120 (9th Cir. 2007)………………………………………...4

*Vicuna v. Alexia Foods, Inc.*,
No. C 11-06119-PJH (N.D. Cal.), 2012 WL 1497507
(N.D. Cal. Apr. 27, 2012)……………………………………………………7

*Werdebaugh v. Blue Diamond Growers*,
No. 12-CV-02724-LHK (N.D. Cal.)……………………………………….7

*Whiteside v. Kimberly Clark Corp.*,
108 F.4th 771, 777 (2024)……………………………………………………...4

*Williams v. Gerber Prods. Co.*,
552 F.3d 934, 938 (9th Cir. 2008)……………………………………4, 5, 19

*Wilson v. Frito-Lay North America, Inc.*,
961 F. Supp. 2d 1134 (N.D. Cal. 2013)………………………………9, 10

**Statutes**

California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*…….2, 3, 5

False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq*………………..2, 3, 5

Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*……………...2, 3, 5

**Rules**

21 C.F.R. § 101.22(a)(5)……………………………………………..1, 13, 16, 17

Fed. R. Civ. P. 8(d)(2)–(3)……………………………………………………...19

Rule 9(b)……………………………………………………………………………5

Rule 12(b)(6)……………………………………………………………………4, 7

Rule 15(a)………………………………………………………………………20

Rule 23……………………………………………………………………………...7

**Introduction**

This is a proposed class action, brought under California law, on behalf of a class of California citizens who were victimized by a uniform deceptive sales practice stretching across multiple Kroger private-label products sold under the Kroger®, Private Selection®, Simple Truth®, and Simple Truth Organic® brands. As alleged in greater detail in the complaint, Defendant employs a uniform policy in which each such product bears identically worded front-of-package claims of "No Preservatives" or "No Artificial Preservatives." Yet, the ingredient list on each product discloses additives such as citric acid, lactic acid, ascorbic acid, sodium citrate, sodium phosphate, disodium phosphate, natamycin, and sodium acid pyrophosphate; additives that fall within the FDA's definition of a chemical preservative as any substance that "tends to prevent or retard deterioration." *See* 21 C.F.R. § 101.22(a)(5). *See also* Complaint ¶¶ 3–4, 49. This uniform mislabeling policy creates a direct contradiction between the products' front label and their actual ingredient composition, misleading consumers into believing that they are purchasing products that are free from preservatives and/or artificial additives, when the products in fact contain preservatives and artificial additives.

As related in the complaint, Plaintiff personally purchased two such products — Kroger® Rich N Creamy Macaroni and Cheese and Kroger® Three Cheese Shells Macaroni and Cheese — each labeled "NO ARTIFICIAL Preservatives," both of which contain citric acid, lactic acid, and sodium phosphate. *See* Complaint at ¶¶ 14,

72–77. As further outlined in detail in the complaint, however, the uniform Kroger policy being challenged is not limited to these two products but rather spans each of the multiple Kroger private-label products specified in the complaint, in that each contains identical misleading statements on the front of the package and identical admissions on the ingredient list on the back of the package which expressly admits the product contains substances legally classified as preservatives.

Plaintiff brings this action as a private attorney general seeking public injunctive relief, and on behalf of a proposed California class and subclasses of purchasers of the thirty-six identified products subject to the uniform policy alleged in the complaint, asserting claims under the CLRA (Cal. Civ. Code § 1750, *et seq.*), the FAL (Cal. Bus. & Prof. Code § 17500, *et seq.*), the UCL (Cal. Bus. & Prof. Code § 17200, *et seq.*), breach of express warranty, and unjust enrichment. *See* Complaint at ¶¶ 16–18, 86–152. The complaint pleads ample facts to support each of these claims, as well as facts demonstrating both the existence and uniform nature of the policy at issue, how that exact same policy extends across multiple Kroger private-label products, and Plaintiff's standing to pursue claims on a class-wide basis on behalf of all California consumers victimized by this same uniform sales policy.

**Summary of Argument**

Defendant The Kroger Co. ("Kroger") asks this Court to dismiss Plaintiff Nance's Complaint in its entirety, with prejudice and without leave to amend, on the same grounds that this very Court considered — and rejected — barely a year ago in a

materially similar case against the same defendant.[1] *See Antossyan v. Kroger Co.*, No. CV 25-5165-GW-MBKx, 2025 U.S. Dist. LEXIS 202749 (C.D. Cal. Oct. 14, 2025) (Wu, J.). Indeed, Kroger raises the exact same arguments in the case at bar — in many instances using the exact same language — which Kroger previously raised, and which this Court rejected, in *Antossyan*. In substance, what Kroger has filed in the case at bar is a motion for reconsideration of the *Antossyan* decision, filed out of time and in the wrong case. Specifically, in both the case at bar and in *Antossyan*, Kroger moved to dismiss a putative class action complaint alleging that certain products were falsely labeled "No preservatives" despite containing preservatives such as citric acid on the product label: arguing that (1) the plaintiff had not plausibly alleged that citric acid functions as a preservative in the challenged product; (2) the plaintiff had not adequately pled reliance; and (3) the plaintiff lacked standing to sue on behalf of purchasers of Kroger products she had not personally bought. This Court rejected each argument in *Antossyan* and should do the same with regard to Kroger's repetition of these same arguments here.

For the same reasons already explained fully in this Court's opinion in *Antossyan*, the Complaint states plausible claims under the CLRA, FAL, UCL, and for breach of express warranty, and Plaintiff has standing to pursue those claims at the pleading stage on behalf of all purchasers of all Kroger private label products

---

[1] The claims in *Antossyan*, involved misleading "No Preservative" labels on a different Kroger product i.e. Kroger's Simple Truth Brand Fruit & Grain Bars

victimized by the same alleged uniform sales policy. Moreover, to the extent the Court does identify any pleading deficiency, dismissal with prejudice of Plaintiff's Complaint in the case at bar would be inappropriate, for the same reasons already articulated when this Court granted leave to amend on every ground on which it dismissed any portion of the *Antossyan* complaint.

**Governing Legal Standards**

**A. Rule 12(b)(6)**

A complaint survives a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept all material factual allegations as true, draw all reasonable inferences in Plaintiff's favor, and construe the Complaint in the light most favorable to Plaintiff. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). *See also Stoner v. Santa Clara Cnty. Office of Educ.*, 502 F.3d 1116, 1120 (9th Cir. 2007) ("All allegations of material fact in the complaint are taken as true and construed in the light most favorable to the plaintiff.").

**B. The "Reasonable Consumer" Test**

"California's UCL, FAL, and CLRA require basic fairness in advertising and permit a civil remedy against those who deceive consumers." *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 777 (9th Cir. 2024). Those laws prohibit not only false advertising, but also advertising that is "either actually misleading or which has a

capacity, likelihood or tendency to deceive or confuse the public." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951, 119 Cal. Rptr. 2d 296, 45 P.3d 243 (2002)). Claims under each of these statutes are governed by the "reasonable consumer" standard, which requires a plaintiff to plead facts showing "that members of the public are likely to be deceived" by the defendant's marketing claims. *Id.*

In addition, "[C]alifornia courts . . . have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision [at the pleadings stage]." *Williams*, 552 F.3d at 938-39 (citing *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134-35, 61 Cal. Rptr. 3d 221 (2007)) (other citations omitted). Dismissals of UCL, FAL, and CLRA claims in the federal court at the pleadings stage have "occasionally been upheld," but such cases are "rare." *See Williams*, 552 F.3d at 939. Dismissal is appropriate only when "the advertisement itself [makes] it impossible for the plaintiff to prove that a reasonable consumer [is] likely to be deceived." *Id.*

**C. Rule 9(b)**

To the extent Rule 9(b) applies to claims sounding in a unified course of fraudulent conduct, Plaintiff need not plead evidence, testing, or scientific literature to substantiate a factual contention. *See Iqbal*, 556 U.S. at 683. Rather, "where the claim is plausible — meaning something more than 'a sheer possibility,' but less than a probability — the plaintiff's failure to prove the case on the pleadings does not warrant

dismissal." *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1078 (9th Cir. 2012). All that matters at the pleading stage is that the allegations "nudge this inference 'across the line from conceivable to plausible.'" *Id.*

**Legal Argument**

## I. KROGER'S ATTEMPT TO LITIGATE THE SCOPE OF THE PROPOSED CLASS OR CLASSES ON A MOTION TO DISMISS, BEFORE ANY CLASS CERTIFICATION MOTION HAS BEEN FILED AND BEFORE ANY DISCOVERY HAS BEEN TAKEN, SHOULD BE REJECTED AS PREMATURE

Kroger devotes a substantial portion of its Motion to arguing that Plaintiff lacks standing to assert claims regarding the thirty-four Products she did not personally purchase. Kroger Motion at 12–15. This Court has already confronted — and rejected — that same argument by this same defendant in *Antossyan*. Specifically, in *Antossyan*, Kroger argued that the plaintiff "lacks both statutory and Article III standing" to bring claims regarding products other than the one she personally purchased. 2025 U.S. Dist. LEXIS 202749, at *11. This Court concluded that the Court should adopt the approach derived from *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015) and defer the question to class certification in light of the Ninth Circuit's guidance, stating: "any issues regarding the relationship between the class representative and the passive class members — such as dissimilarity in injuries suffered — are relevant only to class certification, not to standing." *Antossyan* at *12–13 (quoting *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015)).

As this Court correctly held in *Antossyan*, that deferral approach is "most consistent" with *Melendres* and "related case law on class actions." *Id.* at *13 (quoting *Davis v. The Kroger Co.*, No. 2:22-cv-02082-MEMF-(RAOx), 2023 WL 9511156, at *14 (C.D. Cal. Sept. 22, 2023)). In fact, numerous courts within the Ninth Circuit have certified class actions or refused to grant motions to dismiss in cases where a common sales policy transcended product lines and included products the named plaintiff did not buy. *See e.g., Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724-LHK 2013 U.S.Dist. LEXIS 144178 (N.D.Cal. October 2, 2013)(Judge Koh explicitly granted class certification for a class definition that included consumers who purchased different varieties of Blue Diamond's "Almond Breeze" milk labeled "All Natural" including types that the named plaintiff did not buy); *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. 11-CV-02910-EMC 2012 U.S. Dist. LEXIS 101371 (N.D.Cal. July 20, 2012)(Judge Chen allowed class claims to proceed regarding multiple brands and flavors of ice cream labeled "All Natural" that the named plaintiffs did not purchase, holding any differences among the various flavors were matters to be properly sorted out at the Rule 23 class certification stage, rather than acting as a bar to standing under a Rule 12(b)(6) motion); *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-cv-01196-HSG 2014 WL 1024182 (N.D. Cal. Mar. 13, 2014); *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000 (N.D. Cal. 2012) (Judge Rogers flatly rejected the defense's standing argument regarding unpurchased smoothie kit flavors, holding because the kits were all prominently labeled "All Natural" and all

allegedly contained the same synthetic acids and gums, the named plaintiff had standing to sue on behalf of a class covering the entire product line); *Vicuna v. Alexia Foods, Inc.*, No. C 11-06119-PJH, 2012 WL 1497507 (N.D. Cal. Apr. 27, 2012) (Judge Hamilton ruled that minor variations in product types (*e.g.*, different types of frozen potato or vegetable lines) did not defeat standing at the pleading stage, because the overarching deceptive practice — applying a uniform "All Natural" stamp while utilizing chemical preservatives — was identical across the board); *Chavez v. Blue Buffalo Co., Ltd.*, No. 18-cv-03459-JSW, 2018 WL 11470404 (N.D. Cal. Nov. 14, 2018) (the court evaluated a uniform "True Blue Promise" marketing campaign claiming no by-products or artificial ingredients and sustained the inclusion of product lines the named plaintiff did not buy).

Indeed, in *Antossyan* this Court noted specifically that it had itself "applied [*Melendres*] in the consumer class action context, where the named plaintiffs purported to represent class members who had purchased products the named plaintiffs had not alleged they had purchased." *Id.* at *13 n.4 (citing *Enriques v. Only What You Need, Inc.*, No. 2:24-cv-08969-GW-(BFMx), 2025 U.S. Dist. LEXIS 187170, at *9–10 (C.D. Cal. Sept. 23, 2025)). Applying that approach, the Court held in *Antossyan* — "without conducting a full analysis" — that substantial similarity is satisfied where the products "contain common ingredients or share alleged misrepresentations on the labels." *Id.* at *13–14 (quoting *Mendoza v. Procter & Gamble Co.*, 707 F. Supp. 3d 932, 945–46 (C.D. Cal. 2023)), and denied Kroger's

motion to dismiss the *Antossyan* plaintiff's claims regarding unpurchased varieties for lack of standing. *Id.* at *14.

In the case at bar, the same defendant from *Antossyan*, Kroger, makes these exact same arguments rejected in *Antossyan*, to the very same Court that previously rejected them, in a case where the factual allegations are materially identical to those pleaded in *Antossyan*, hoping somehow for a different result. That hope is ill-founded and the same result is warranted here.

Plaintiff alleges that all thirty-six products subject to Kroger's uniform policy bear an identical misrepresentation — a front-label claim of "No Preservatives" or "No Artificial Preservatives" — and that each product's ingredient list discloses one or more of a defined, common set of eight additives falling squarely within the FDA's regulatory definition of a chemical preservative. *See* Complaint ¶¶ 3–4, 14, 49–50, 56. The two products Plaintiff personally purchased contain three of those same additives — citric acid, lactic acid, and sodium phosphate. *Id.* ¶ 74. Under *Mendoza* and this Court's own application of that standard in *Antossyan*, common ingredients and a shared policy of using front-label misrepresentations claiming no preservatives are sufficient at the pleading stage and a fully developed "substantial similarity" analysis, product-by-product, is "a fact-heavy inquiry" properly reserved for class certification "after discovery." *Antossyan*, 2025 U.S. Dist. LEXIS 202749, at *32 n.13 (quoting *Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 572 (N.D. Cal. 2013)).

Kroger's reliance on *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861 (N.D. Cal. 2012) and *Wilson v. Frito-Lay North America, Inc.*, 961 F. Supp. 2d 1134 (N.D. Cal. 2013), does not compel a different result. Motion at 13–14. Those decisions predate the Ninth Circuit's *Melendres* decision and this Court's own subsequent application of it in *Antossyan* and *Enriques*. Moreover, even accepting a substantial-similarity framework, Plaintiff's allegations are considerably narrower and more concrete than a "laundry list" pleading. Plaintiff has identified a specific, closed universe of eight challenged additives and thirty-six specific products, each of which was subject to the uniform sales practice challenged of placing front-label claims of no preservatives while listing preservatives on the back ingredient list. This is entirely unlike a plaintiff who merely asserts that dissimilar snack categories are "basically the same." *Wilson*, 961 F. Supp. 2d at 1141.

Based on the foregoing, Kroger's challenge to the unpurchased products should be denied, or, at a minimum, deferred until a developed factual record exists and an actual class certification motion has been filed, briefed and argued.

## II. PLAINTIFF HAS ADEQUATELY PLED RELIANCE AND INJURY SUFFICIENT FOR ARTICLE III AND STATUTORY STANDING

Kroger next argues that Plaintiff fails to plead reliance because she does not specify what she "understood" the "NO ARTIFICIAL Preservatives" statement to mean or how it "led to her purchase." Motion at 7–10. Under California law, a plaintiff need only allege that "the misrepresentation was an immediate cause of the

injury-producing conduct," not "the sole or even the decisive cause." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1020 (9th Cir. 2020) (quoting *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 327 (2011)). An allegation that, "as a result of [a misrepresentation], [a] Plaintiff paid more for [a product] than [she] would have paid in the absence of the [misrepresentation], or would never have purchased [the product]' . . . is sufficient under *Kwikset* to survive a motion to dismiss." *Id.* (brackets omitted). Reliance, moreover, "may [be] inferred from the misrepresentation of a material fact," and materiality is "generally a question of fact that cannot be decided at the motion to dismiss stage." *Id.* at 1021.

Again, in *Antossyan*, this Court rejected the exact argument now by Kroger. This Court held that an allegation that the plaintiff "made her purchasing decision because of the labeling on the Product that read 'no preservatives'" was sufficient, reasoning that it "cannot fathom how else" the plaintiff could have made such an allegation without reading the product label. *Antossyan*, 2025 U.S. Dist. LEXIS 202749, at *29. The Complaint in the case at bar alleges the same thing, and in some respects is even more specific than what was pleaded in *Antossyan*. For example, Plaintiff alleges that she "reasonably *relied* on Kroger's misrepresentations in purchasing the Products," that the representations "were material to Plaintiff's purchase," and that "if Plaintiff had known the truth about the Products — that they in fact contained preservatives and artificial preservatives — then she would not have purchased the Products, would not have paid as much for the Products, and/or would

have otherwise acted differently." Complaint at ¶ 77. Plaintiff further alleges the specific products purchased, the specific store, and the specific date of purchase (Compl. ¶¶ 14, 72), the specific representation on the front label with photographic exhibits (¶ 73 & Figs. 4–5), and the specific ingredients disclosed on the back label with a photographic exhibit (¶ 74 & Fig. 6). Under *Antossyan*, *Moore*, and *Kwikset*, these allegations are sufficient.

Kroger's cited authorities are distinguishable. In *Gumner v. PepsiCo, Inc.*, 2023 WL 9019040, at *4 (C.D. Cal. Aug. 3, 2023), and *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1114 (N.D. Cal. 2016), the plaintiffs pled only a bare legal conclusion that they were exposed to, read, and relied upon a challenged claim, without identifying the specific product, specific representation, or circumstances of purchase. Plaintiff in the case at bar has done what those plaintiffs did not: she has identified the exact products, the exact representation, the exact date and location of purchase, and included photographic evidence of both the front and back labels she saw. *See* Complaint at ¶¶ 14, 72–75 & Figs. 4–6. That is materially more than "a short and plain" conclusory recitation, and it mirrors precisely what this Court already found adequate in *Antossyan*.

## III. PLAINTIFF HAS ADEQUATELY ALLEGED THAT CITRIC ACID, LACTIC ACID, AND SODIUM PHOSPHATE FUNCTION AS PRESERVATIVES IN THE MACARONI AND CHEESE PRODUCTS

Kroger also argues that Plaintiff has not plausibly alleged that citric acid, lactic acid, or sodium phosphate function as preservatives in the Macaroni and Cheese

Products, and that she must plead "testing or scientific literature" specific to those Products. Motion at 15–19. This is yet another repeat argument which this Court squarely rejected in *Antossyan*, holding: "[N]either Rule 12(b)(6) nor Rule 9(b) requires [a plaintiff] to plead 'testing or scientific literature . . . showing that the citric acid specifically in the [product] functions as a preservative,'" which would impose an improper "stringent burden on a plaintiff at the pleading stage." 2025 U.S. Dist. LEXIS 202749, at *16–17. As this Court correctly held, the word "preservative" carries "two possible meanings": an ingredient that actually functions to preserve a specific product, or, "alternatively," an ingredient that "has the power or the tendency to preserve, regardless of whether it has a preserving function in a specific product." *Id.* at *15–16 (quoting *Kelly v. Beliv LLC*, 640 F. Supp. 3d 286, 296 (S.D.N.Y. 2022)). This Court has already held that "whether citric acid actually functions as a preservative . . . is a question of fact unsuitable for resolution at the pleading stage." *Id.* at *20.

Plaintiff's allegations here meet that standard — indeed, they track allegations that numerous courts, including this Court, have already found sufficient in cases involving citric acid specifically in macaroni-and-cheese products. Plaintiff alleges the FDA's regulatory definition of a "chemical preservative" as a substance that "tends to prevent or retard deterioration." *See* Complaint at ¶ 49 (quoting 21 C.F.R. § 101.22(a)(5)). It further alleges that citric acid, lactic acid, and sodium phosphate perform exactly that function in the products — regulating pH, stabilizing texture,

inhibiting microbial growth, and maintaining product stability "during preparation and storage." *Id.* ¶¶ 59, 74–75. Plaintiff further alleges that the FDA has specifically classified citric acid as a "Preservative" used to "[p]revent food spoilage," "slow or prevent changes in color, flavor, or texture and delay rancidity," and "maintain freshness." *Id.* ¶ 75.

This is the same kind of allegation that survived dismissal in *Hayes v. Kraft Heinz Co.* — a case, like this one, alleging that citric acid functioned as a preservative in a macaroni and cheese product, where the court held that the plaintiff's citations to "scholarly articles describing [citric acid's] role in preserving food, as well as FDA guidance that describes citric acid as a preservative . . . are enough to withstand a motion to dismiss." No. 1:23-cv-16596, 2024 WL 4766319, at *4 (N.D. Ill. Nov. 13, 2024); *see also Squeo v. Campbell Soup Co.*No. 24-cv-02235-SVK, 2024 U.S. Dist. LEXIS 192003 (N.D.Cal. October 22, 2024)(Plaintiffs plausibly alleged citric acid functioned as a preservative because they alleged both that citric acid generally functions as a preservative when added to food and that it did so in the products at issue).

Kroger's reliance on *Hu v. Herr Foods, Inc.*, 251 F. Supp. 3d 813 (E.D. Pa. 2017), fares no better here than it did in *Antossyan*, where this Court found *Hu*'s reasoning "unpersuasive" because it "refused to credit the plaintiff's definition of a preservative," whereas Plaintiff's definition here "is supported by the common definition of that term." 2025 U.S. Dist. LEXIS 202749, at *18. *Hu* is also factually

distinguishable: the *Hu* plaintiff discussed citric acid's preservative properties only in unrelated products (packaged pineapple, croutons, chicken carcasses, beef trim), requiring a "chain of speculative assumptions" to connect that discussion to the defendant's dry snack foods. *Id.* at *18–19 (discussing *Hu*, 251 F. Supp. 3d at 821–22).[2]

Plaintiff's allegations here require no such chain: citric acid and sodium phosphate are commonly recognized preservatives in processed foods generally, Plaintiff has alleged their specific presence in the specific products she purchased, and *Hayes* confirms that comparable allegations regarding citric acid in a macaroni and cheese product are sufficient to state a claim.

## IV. DEFENDANT'S ARGUMENT REGARDING THE WORD "ARTIFICIAL" IS A RED HERRING AND WITHOUT MERIT

Kroger separately argues that, even if citric acid, lactic acid, and sodium phosphate function as preservatives, Plaintiff has not alleged that they are artificial

---

[2] Kroger's related argument — that allegations of "common industry practice" cannot substitute for allegations about Kroger's "actual practice," (Motion at 18–19) conflates two different lines of authority. As this Court recognized in *Antossyan*, because there is a genuine ambiguity as to whether citric acid is a preservative whenever it is present, **"an allegation that citric acid is a preservative may require fewer factual allegations concerning a defendant's specific practices . . . than an allegation that a specific ingredient within a product is artificial."** *Antossyan* at *19–20 (citing *Quiroz v. Beaverton Foods, Inc.*, 2019 WL 1473088, at *9 (E.D.N.Y. Mar. 31, 2019)) (emphasis added). Whether the citric acid, lactic acid, and sodium phosphate in the Macaroni and Cheese products in fact function as preservatives is, at bottom, **"a question of fact unsuitable for resolution at the pleading stage."** *Id.* at *20. (emphasis added).

preservatives — a distinction Kroger contends is fatal to claims based on the "No Artificial Preservatives" label on the Macaroni and Cheese Products. Motion at 19–21. For various reasons, this argument is without merit.

First, as to the Macaroni and Cheese Products Plaintiff purchased, the Complaint alleges that Kroger "made the decision to add preservatives to each Product's formulation" and "in fact added preservatives to each Product," (Complaint at ¶ 62), and that sodium phosphate and lactic acid are "preservatives and/or artificial preservatives commonly used in processed foods…" *Id.* ¶ 59. The FDA's own definition of the operative regulatory term is a "chemical preservative" — that is, a chemical substance added to food to retard deterioration, 21 C.F.R. § 101.22(a)(5) (Complaint at ¶ 49). Plaintiff has alleged that Kroger affirmatively formulated these products by adding such chemical agents rather than relying on properties inherent in the food's natural composition. Whether a consumer would reasonably understand a chemical additive that is deliberately formulated into a packaged food product for a preservative function to be an "artificial" preservative, as opposed to some other category of preservative, presents the same kind of factual dispute over an ingredient's classification that courts in this Circuit have repeatedly held is inappropriate for resolution on a motion to dismiss. *See Morris v. Mott's LLP*, 2019 WL 948750, at *4 (C.D. Cal. Feb. 26, 2019) (defendant's argument "that the malic acid in its snacks functions exclusively as pH control agent and not as a flavor . . . [was] inappropriate for determination on a motion to dismiss"); *Sims v. Campbell*

*Soup Co.*, 2018 U.S. Dist. LEXIS 222535, *16 (C.D. Cal. 2018)("Defendants' arguments that malic acid is not, or does not function as, a flavor go to disputed factual questions that the Court cannot resolve at the motion to dismiss stage."); *Ivie v. Kraft Foods Global, Inc.*, 2013 WL 685372, at *10 (N.D. Cal. Feb. 25, 2013) (whether an ingredient "is used as a . . . flavoring agent in this particular product, and whether a reasonable consumer would have thus been misled by the 'no artificial . . . preservatives' label, are inappropriate for determination on a motion to dismiss").

Second, Kroger's argument has no application to the products in the proposed class definition that are labeled simply "No Preservatives," without the modifier "Artificial." For example, Kroger's Simple Truth Organic® Tomato Basil Soup (Complaint at ¶ 60), and the subclass defined in the Complaint at ¶ 18 do not in any way relate to the word artificial. As to those products, Plaintiff need only allege — as she has — that the disclosed ingredient functions as a preservative under the FDA's regulatory definition; no separate showing of artificiality is required, and *Antossyan's* reasoning applies to those claims without qualification.

Third, Defendant's hyper-technical objection to Plaintiff's use of the phrases "No Preservatives" and "No Artificial Preservatives" completely ignores the policy alleged and the binary reality of that alleged front-of-package policy. Plaintiff's claim does not hinge on whether a product contains artificial ingredients or all-natural ingredients. Rather, Plaintiff's claim is that the Defendant pursues a uniform policy of denying on the front label that the product contains ingredients that are legally

classified as preservatives, while the back admits the product contains such preservatives. Thus, a front label representation that a food contains "No Artificial Preservatives" is inherently a subset of a broader claim of "No Preservatives" and is part of the same alleged uniform policy: falsely claiming on the front label the product has no preservatives. Put simply, if a product contains any unauthorized chemical preservative whatsoever — artificial or otherwise — a front-label representation that it contains no preservatives is deceptive. Plaintiff is not required to definitively prove the chemical genealogy of every additive at the pleading stage; alleging that these specific eight ingredients are all chemical preservatives under 21 C.F.R. § 101.22(a)(5) is more than sufficient to state a plausible claim for relief.

Finally, at a bare minimum, if the Court concludes that the Complaint's allegations regarding "artificiality" require further factual specificity and/or development, the appropriate remedy is leave to amend — not dismissal with prejudice. This Court granted leave to amend on every ground on which it dismissed any portion of the *Antossyan* complaint. 2025 U.S. Dist. LEXIS 202749, at *33, *35. Kroger identifies no basis — and none exists — for treating Plaintiff's pleading any differently.

## V. KROGER'S BACK-LABEL ARGUMENT FAILS FOR THE SAME REASON THIS COURT REJECTED IT IN *ANTOSSYAN*

To the extent Kroger contends that the back-label ingredient disclosure cures any front-label misrepresentation, that argument was also squarely rejected in

*Antossyan*. "Reasonable consumers are not 'expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box.'" *Antossyan*, 2025 U.S. Dist. LEXIS 202749, at *25 (quoting *Williams*, 552 F.3d at 939). A back label may resolve ambiguity in a front label, but "a reasonable consumer would not require further information before concluding" that a "no preservatives" or "no artificial preservatives" claim "has promised a preservative-free product" — that it is an unambiguous, affirmative promise, and "if citric acid is a preservative, then the label is 'unambiguously deceptive.'" *Antossyan*, 2025 U.S. Dist. LEXIS 202749, at *26–27. Under the reasoning of *Antossyan*, an ingredient disclosure on the back of the Macaroni and Cheese Products' packaging does not defeat Plaintiff's claims as a matter of law.

## VI. PLAINTIFF'S UNJUST ENRICHMENT CLAIM SHOULD NOT BE DISMISSED WITH PREJUDICE

Kroger correctly notes that California treats unjust enrichment as a remedy rather than a freestanding cause of action, and cites this Court's decision in *Forever 21, Inc. v. Seven Lions Inc.*, 2012 WL 12888694, at *2–3 (C.D. Cal. Oct. 18, 2012). Motion at 21. Plaintiff's unjust enrichment claim, however, seeks restitution of the price premium Kroger obtained by virtue of its mislabeling — a quasi-contract theory that numerous courts construe as cognizable notwithstanding the "no standalone cause of action" rule, particularly where, as here, it is pled in the alternative pursuant to Fed. R. Civ. P. 8(d)(2)–(3), and where Kroger's own Motion disputes the existence

and validity of the express warranty Plaintiff also alleges. *Compare* Complaint at ¶¶ 144–48 (express warranty) with Complaint at ¶¶ 150–52 (unjust enrichment). Even should the Court agree that the unjust enrichment claim cannot proceed in its current form, dismissal without leave to amend would be unwarranted. Accordingly, Plaintiff respectfully requests that this Court deny Defendant's Motion on this point or, at a minimum, grant leave to replead this claim, consistent with Rule 15(a)'s liberal standard and this Court's practice in *Antossyan*.

**Conclusion**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Kroger's Motion to Dismiss in its entirety. In the alternative, to the extent the Court finds any portion of the Complaint deficient, Plaintiff respectfully requests leave to amend to cure any such deficiency, consistent with this Court's disposition of the comparable motion in *Antossyan v. Kroger Co.*, 2025 U.S. Dist. LEXIS 202749 (C.D. Cal. Oct. 14, 2025).

DATED this 26th day of October, 2026.

Presented by:

DeNITTIS OSEFCHEN PRINCE, P.C.

By: ______________________

Stephen DeNittis, Esq.*
Shane T. Prince, Esq.
5 Greentree Centre
525 Route 73 North, Suite 410
Marlton, New Jersey 08057

T. 856.797.9951
F. 856.797.9978
sdenittis@denittislaw.com
sprince@denittislaw.com

ABIRI LAW, PC
Robert Abiri, Esq.
30021 Tomas Street, Suite 300 Rancho Santa Margarita, CA 92688
T. 949.459.2133
F. 949.534.4367
rabiri@abirilaw.com

*Attorneys for Plaintiff and the Proposed Classes*

**Pro hac vice application submitted*

# **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 4,854/7,000 words, which complies with the word limit of L.R. 11-6.1.

DATED this 26th day of October, 2026.

By: ______________________
Stephen DeNittis, Esq.